HARDING, Justice.
This cause is before us on direct appeal brought by United Telephone Company (United) to review Orders No. 24049 and No. 24595 of the Florida Public Service Commission (Commission). The orders at issue determined that United’s 1990 rate of return on equity (ROE) would exceed the authorized rate and provided for the disposition of certain revenues held subject to corporate undertaking. We have jurisdiction pursuant to article V, section 3(b)(2) of the Florida Constitution. For the reasons expressed below, we quash the Commission’s orders and remand for a hearing as to United’s 1990 earnings.
By Order No. 22205 dated November 21, 1989, the ‘ Commission initiated a limited proceeding to determine United’s appropriate ROE and to investigate the company’s earnings. The order noted that at the time of the last rate case in 1982, United consisted of four separate companies which were merged into the current company. The order further noted that United’s authorized ROE was scheduled to revert to a range of 14.75% to 16.75% on January 1, 1990.
On December 14, 1989, the Commission held a public hearing limited to the issues of determining an appropriate ROE for United and the method by which revenues subject to refund, if any, should be calculated. On January 8, 1990, the Commission issued Order No. 22377 setting the appropriate ROE at 12.3% to 13.3% and placing $7.6 million of revenue subject to refund with interest, effective January 1, 1990. Order No. 22377 also stated that the “interim statute,” section 364.055, Florida Statutes (1989),[1] did not adequately address the factual particulars of the instant situation because “the last authorized return on common equity set for this Company was set so long ago and in such a different financial climate, that it would be inappropriate to utilize it at this time.” Accordingly, the Commission relied upon its general authority to regulate the telecommunications industry as provided in section 364.14, Florida Statutes (1989),[2] to hold a limited proceeding in this case.
The Commission granted United’s request for a prospective test year of calen *1242 dar year 1991. On May 15, 1990, United filed its minimum filing requirements which, along with subsequently filed modifications, requested an increase in rates and charges to produce additional revenues of $26.2 million for the projected 1991 test year. The Commission conducted two service hearings in July and August, and set the matter for public hearing in October 1990. The Office of Public Counsel and the Commission staff obtained extensive discovery material from United.
Prior to public hearings in the rate proceeding, the Commission issued prehearing Order No. 23539. That prehearing order addressed a number of issues, but the only one pertinent to this appeal is Issue No. 63, which involved “the amount and appropriate disposition of the revenue held subject to corporate undertaking.” United, through the testimony of its chief financial officer, asserted that the issue could not be determined until the 1990 results were known. The Commission staff took no position on the issue at that time, pending further discovery.
Following public hearings in October 1990, the Commission issued Order No. 24049 on January 31, 1991. Pertinent to this appeal, the order stated that the procedure utilized in the limited proceeding is “the same procedure outlined in the interim statute except for our decision to use a current ROE.” Moreover, the Commission denied United’s request to conduct a separate overearnings review of the 1990 financial results because “[tjhis Commission does not conduct full reviews of interim periods to determine if interim awards were exactly correct.” Based upon the testimony and analyses of two expert witnesses, the Commission found “it appropriate to set rates for United that will produce a 13.0% ROE.” As provided by Order No. 24049 and Order No. 24942 issued on August 20, 1991, a total of $7,605,000 is held subject to refund plus interest.
United filed a Motion for Reconsideration of Order No. 24049 asking, in part, that the Commission reconsider the use of the earnings surveillance report as a proxy for 1990 calendar year earnings. The Commission issued Order No. 24595 on May 29, 1991, which denied United’s motion. Order No. 24595 also stated that the earnings surveillance report was “the latest and, presumably therefore, the most accurate reflection this Commission had of United’s earnings during the interim period” and “the only evidence in the record as to the Company’s 1990 earnings.”
United filed a notice of administrative appeal on June 21, 1991. United challenges the Commission’s orders, asserting two issues: (1) that the Commission had no statutory authority to determine the company’s 1990 rate of return in the manner in which it did; and (2) that the Commission did not rely upon competent substantial evidence to determine the company’s 1990 rate of return.
We find the first issue to be disposi-tive in this case. United contends that the Commission’s actions were not in conformity with its statutory grant of authority. As noted in Order No. 22377, the Commission initiated a limited proceeding under the general authority granted by section 364.14, rather than an interim proceeding as provided in section 364.055. According to United, chapter 364 did not contain a provision for such a limited proceeding pri- or to its revision in 1990, which was not *1243 applicable to this docket initiated in 1989.[3] The Commission responds that the interim statute was followed in all respects except determining the appropriate ROE level. We agree with the Commission that the unusual factual circumstances of this case, namely the length of time since the company’s last full rafe proceeding and the drop in interest rates, would have resulted in “unjust, unreasonable, [and] unjustly discriminatory” earnings for United, to the detriment of its ratepayers. § 364.14(1), Fla.Stat. (1989). Accordingly, we find that the Commission had the inherent authority to conduct a limited proceeding in this case, even before specific legislation conferred the express authority to do so. Cf. Southern Bell Tel. & Tel. Co. v. Bevis, 279 So.2d 285 (Fla.1973) (Court approved Commission's inherent authority to make interim rate increase).
However, the Commission’s authority to conduct a limited proceeding as to United’s ROE addresses only part of the issue raised by United in this case. United also contends that the Commission has expediently selected portions of several statutes in order to evade its duty of holding a hearing to determine whether United’s 1990 earnings exceeded its authorized rate of return. United points out that the Commission designated the first proceeding a “limited proceeding” in order to avoid using “the maximum range of the last authorized rate of return on equity established in the company’s most recent rate case” as the interim statute requires. § 364.-055(5)(b)(3), Fla.Stat. (1989). In this case, the 16.75% ROE from United’s last rate case would have resulted in no excess earnings being available for refund. We agree with the Commission’s conclusion that the interim statute would have produced an unreasonable result given the factual particulars of this case. We also agree that the Commission had the inherent authority under section 364.14 to conduct a limited proceeding as to the appropriate rate of return.
However, having chosen that route, the Commission cannot now re-designate the outcome of that prior proceeding as an “interim award” in order to bypass constitutional due process requirements. The public policy of this state favors traditional due process rights in rate hearings, whether permanent or interim. Citizens of Fla. v. Mayo, 333 So.2d 1, 6 (Fla.1976). Nor can there be any “compromise on the footing of convenience or expediency ... when the minimal requirement of a fair hearing has been neglected or ignored.” Florida Gas Co. v. Hawkins, 372 So.2d 1118, 1121 (Fla.1979). In this case, the Commission cannot manipulate its statutory authority to either ignore the 13.3% ROE authorized in Order No. 22377 or to deny United a hearing as to its 1990 over-earnings.
In Order No. 24049, the Commission denied United’s request to conduct a separate overearnings review of the company’s 1990 financial results, stating that “[t]his Commission does not conduct full reviews of interim periods to determine if interim awards were exactly correct.” However, we find that the Commission’s designation of the first proceeding as “interim” on the issue of United’s appropriate rate of return was inappropriate. As this Court explained in United Telephone Co. v. Mann, 403 So.2d 962, 967 (Fla.1981), “changes in the cost of common equity are not easily calculable, [and thus] not proper subjects for interim hearings.” Indeed, the Commission even styled Order No. 22377 as a “final order” setting United’s ROE for purposes of the limited proceeding. Thus, we find that the Commission had a duty to conduct a fair hearing to determine whether United’s 1990 earnings exceeded its authorized rate of return.
Accordingly, we quash the Commission’s orders and remand with directions to hold a *1244 hearing on the issue of United’s 1990 earnings.
It is so ordered.
overton, McDonald, shaw, GRIMES and KOGAN, JJ., concur. BARKETT, C.J., concurs in result only.

.Section 364.055(5), Florida Statutes (1989), provides in pertinent part:
(5)(a) The commission, in setting interim rates or setting revenues subject to refund, shall determine the revenue deficiency or excess by calculating the difference between a telephone company’s achieved rate of return and its required rate of return applied to an average investment rate base or an end-of-period investment rate base.
(b) For purposes of this subsection:
1. "Achieved rate of return” means the rate of return earned by the company for the most recent 12-month period. The achieved rate of return shall be calculated by applying appropriate adjustments consistent with those which were used in the company's most recent rate case and annualizing any rate changes occurring during such period.
2. "Required rate of return" shall be calculated as the weighted average cost of capital for the most recent 12-month period, using the company's last authorized rate of return on equity, the current embedded cost of fixed-rate capital, the actual cost of short-term debt, the actual cost of variable-cost debt, and the actual cost of other sources of capital which were used in the company's last rate case.
3.In a proceeding for an interim increase, the term “last authorized rate of return on equity" used in subparagraph 2. means the minimum of the range of the last authorized rate of return on equity established in the company’s most recent rate case. In a proceeding for an interim decrease, the term “last authorized rate of return on equity” used in subparagraph 2. means the maximum of the range of the last authorized rate of return on equity established in the company’s most recent rate case.

. Section 364.14, Florida Statutes (1989), provides in pertinent part:
(1) Whenever the commission finds, upon its own motion or upon complaint, that the rates, charges, tolls, or rentals demanded, exacted, charged, or collected by any telephone company for the transmission of messages by telephone, or for the rental or use of any telephone line; any telephone receiver, transmitter, instrument, wire, cable, apparatus, conduit, machine, appliance, or device; or any telephone extension or extension system, *1242 or that the rules, regulations, or practices of any telephone company affecting such rates, charges, tolls, rentals, or service are unjust, unreasonable, unjustly discriminatory, unduly preferential, or in anywise in violation of law, or that such rates, charges, tolls, or rentals are insufficient to yield reasonable compensation for the service rendered, the commission shall determine the just and reasonable rates, charges, tolls, or rentals to be thereafter observed and in force and fix the same by order as hereinafter provided. In prescribing rates, the commission shall allow a fair and reasonable return on the telephone company’s honest and prudent investment in property used and useful in the public service.

. In 1990, the legislature created section 364.-058, Florida Statutes (Supp.1990), which gives the Commission express authority to “conduct a limited proceeding to consider and act upon any matter within its jurisdiction, including any matter the resolution of which requires a telecommunications company to adjust its rates.” See ch. 90-244, § 11, Laws of Fla.